# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE ROMEO, individually, and CLIFFORD KIDD, individually, on behalf of themselves and all other similarly situated,<br><br>　　　　　　　　　　　　　　Plaintiffs,<br>　vs.<br><br><br>THE HOME DEPOT U.S.A., INC, a Delaware Corporation, dba HOME DEPOT U.S.A. INC. and EXPO DESIGN CENTER and DOES 1 through 50, inclusive, UNITED STATES OF AMERICA,<br><br>　　　　　　　　　　　　　　Defendants. | CASE NO. 06CV1505 IEG (WMc)<br><br>**ORDER (1) SUSTAINING PLAINTIFFS' OBJECTIONS TO DEFENDANT'S DECLARATIONS; (2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; AND (3) DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AS MOOT**<br><br>(Doc. No. 43, 44, 48, 50, 51, 52, 55, 56, 57) |

Presently before the Court is Home Depot Inc.'s ("Defendant's") motion for summary judgment. For the reasons set forth below, the Court GRANTS Defendant's motion.

## BACKGROUND

**A.    Factual Background**

This class action suit challenges Defendant's use of a credit card refund form with a preprinted space for a customer's telephone number as a violation of the Song-Beverly Credit Card Act ("Song-Beverly" or "the Act"), Cal. Civ. Code § 1747.08.[1]  Under the Act:

> [N]o person, firm, partnership, association, or corporation that accepts credit cards for the transaction of business shall . . . [u]tilize, in any credit card transaction, a credit card form which contains preprinted

---

[1] All unspecified subsection citations are for the Cal. Civ. Code § 1747.08.

- 1 -

>spaces specifically designated for filling in any personal identification information of the cardholder.

Cal. Civ. Code § 1747.08(a)(3). The Act provides for civil penalties of $250 for the first violation and $1000 for each subsequent violation. See id. § 1747.08(e).

The form at issue is labeled "REFUND" and contains a space for the cardholder's name, telephone number, and signature. (See Def.'s Decl. ISO Motion, Ex. A.) Joe Romeo and Clifford Kidd ("Plaintiffs") allege that they filled in their telephone numbers on Defendant's refund form when returning items to Defendant's store. Plaintiffs seek: (1) statutory penalties for each credit card refund performed by Defendant in California during the class period; and (2) an injunction against future use of the refund slip.

**B.     Procedural Background**

On June 20, 2006, Plaintiffs filed their complaint in San Diego Superior Court. On July 26, 2006, Defendant removed the case to this Court. (Doc. No. 1.)

On August 31, 2007, Defendant filed the present motion, arguing it is entitled to summary judgment on Plaintiffs' claims based on any of the following independent grounds: (1) Section 1748.08(a)(3) does not reach transactions related to credit card *refunds*, only credit card *purchases*; (2) Defendant's use of the refund forms was for a legitimate business purpose and thus falls within an exception to the Act's liability provisions; or (3) Defendant's violation of the Act was unintentional and instead the result of a bona fide error, making statutory penalties unavailable. (Doc. No. 44.) Plaintiffs filed an opposition on September 17, 2007. (Doc. No. 48.) And on September 24, 2007, Defendant filed a reply. (Doc. No. 51.) The Court held oral argument on October 1, 2007.

Also pending with the Court is Plaintiffs' motion for class certification, which was filed on August 31, 2007. (Doc. No. 43.) Defendant has filed an opposition and Plaintiffs have filed a reply. (Doc. No. 50, 55.) A hearing on Plaintiffs' motion is currently scheduled for October 22, 2007.

**LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Klamath Water Users Protective Ass'n v. Patterson, 204 F.3d 1206, 1210 (9th Cir. 2000) (recognizing that where material facts are undisputed, the court only

1 decides the application of relevant law). A dispute is "genuine" when "the evidence presented is such that a jury applying [the appropriate] evidentiary standard could reasonably find for either the plaintiff or the defendant." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. See Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the non-moving party's case, or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. See id. at 322-23.

Once the moving party meets the requirement of Rule 56, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." Id. Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250. To make such a showing, the non-moving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 325.

**DISCUSSION**

**A.  Plaintiffs' Objections to Defendants' Declarations**

As an initial matter, the Court **SUSTAINS** Plaintiffs' Objections to Defendants' Declarations (Doc. No. 52). The Court has not considered the declarations in ruling on the present motion.

**B   Defendant's Grounds for Summary Judgment**

As mentioned above, Defendant argues that it is entitled to summary judgment on Plaintiffs' claims based on any of the following grounds: (1) Section 1748.08(a)(3) does not reach transactions related to credit card *refunds*, only credit card *purchases*; (2) Defendant's use of the refund forms was for a special purpose and thus falls within an exception to the Act's liability provisions; or (3) Defendant's violation of the Act was unintentional and instead the result of a bona fide error, making statutory penalties unavailable. The Court will take up these challenges in reverse order.

### 1. Does Defendant's conduct fall within an exception to the Song-Beverly Act for bona fide errors?

Assuming section 1748.08(a)(3) applies to refund transactions, Defendant argues that it would be entitled to summary judgment under Cal. Civ. Code § 1747.08(e). Subsection 1747.08(e) provides a safe harbor from statutory penalties under the Act where a defendant's violation was the result of a "bona fide error." In its relevant portion, subsection (e) provides as follows:

> [N]o civil penalty shall be assessed for a violation of this section if the defendant shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error made notwithstanding the defendant's maintenance of procedures reasonably adopted to avoid that error.

Cal. Civ. Code § 1747.08(e). Defendant argues that its confusion over the Act's applicability to refund transactions invokes the exception. Further, Defendant contends that, as required by the subsection, it has maintained reasonable procedures to avoid errors, by never using a preprinted form with regard to credit card purchases and by safeguarding the preprinted forms used in connection with refunds.

Plaintiffs argue that Defendant has misinterpreted what constitutes an unintentional violation under subsection (e). The test is not whether Defendant intended to violate the Act, rather, the inquiry centers on whether Defendant intended to request the prohibited information, by, in this instance, utilizing an unlawful transaction form. Subsection (e), the Plaintiffs continue, is not meant to excuse ignorance of the law but instead to safeguard against violations that occur outside the normal scope of a defendant's business practice.

Plaintiffs' argument is more persuasive. Subsection (e) is directed at instances where despite internal policy prohibiting personal information requests, a store employee nonetheless requests and/or captures this information. In contrast to that situation, Defendant concedes that, as a matter of corporate policy, employees were trained to present customers with a credit card return form containing spaces for a telephone number. As such, Defendant's violations did not "result from a bona fide error notwithstanding internal procedures adopted to void that error."

### 2. Does Defendant's conduct fall within an exception to the Song-Beverly Act for special purposes?

Again, assuming section 1748.08(a)(3) applies to refund transactions, Defendant argues that it is exempt from liability because its alleged violations fall within the statutory exception for so-called

special purposes, codified at § 1747.08(c)(4). That subsection reads as follows:

> Subdivision (a) does not apply to the following instances: . . . [i]f personal identification information is required for a special purpose incidental but related to the individual credit card transaction, including but not limited to, information relating to shipping, delivery, servicing, or installation of the purchased merchandise, or for special orders.

Cal. Civ. Code § 1747.08(c)(4). Specifically, Defendant asserts the refund slips were used solely to investigate and prosecute refund fraud, a special purpose related to the individual credit card transaction.

Plaintiffs argue that Defendant's purported purpose does not fit alongside the several examples enumerated in the Act, like shipping, delivery, and installation, in that the capture of personal information during refund transactions is not "required" to complete the underlying transaction in the same way that some exchange of personal information is vital to compete shipping, delivery, and installation.

Once again, Plaintiffs' argument is most persuasive. The class of activities described in subsection (c)(4)—shipping, delivery, servicing, and installation—all require some personal information be conveyed such that the shipping, delivery, servicing, or installation can be completed. Defendant has failed to explain how a phone number is necessary to effectuate a return as opposed to merely convenient for the retailer in cases of suspected fraud. Indeed Defendant's assertion that it discontinued use of the preprinted form, even before this lawsuit was initiated, is conclusive evidence that the practice was not required to complete credit card refund transactions.

### **3.    Does Cal. Civ. Code § 1747.08(a)(3) reach refund transactions?**

The Court finally considers Defendant's argument that subsection (a)(3) of the Song Beverly Act does not reach refund transactions.

The Song-Beverly Act imposes on businesses three substantive prohibitions, contained in three adjacent provisions:

> (a) Except as [otherwise] provided . . . no person, firm, partnership, association, or corporation that accepts credit cards for the transaction of business shall do any of the following:
>
> (1) *Request, or require, as a condition to accepting the credit card as payment* in full or in part for goods or services, the cardholder to write any personal identification information upon the credit card transaction form or otherwise.

- 5 -

> (2) *Request, or require as a condition to accepting the credit card as payment* in full or in part for goods or services, the cardholder to provide personal identification information, which the . . . corporation accepting the credit card . . . records upon the credit card transaction form or otherwise.
>
> (3) Utilize, in any credit card transaction, a credit card form which contains preprinted spaces specifically designated for filling in any personal identification of the cardholder.

Cal. Civ. Code § 1747.08(a) (emphasis added). As mentioned above, Plaintiffs' claims are based on the prohibition contained in subsection (a)(3).

Defendant argues that if all three of the Act's liability provisions are read in context, it is clear that subsection 1747.08(a)(3), like (a)(1) and (a)(2), was only intended to address and prohibit the collection of cardholder information during credit card purchase transactions, not refunds. Defendant further asserts that adopting Plaintiffs proposed interpretation would have illogical results. Specifically, Defendant points out that interpreting (a)(3) as applying to both credit card purchases and refunds would mean acquiring cardholder information during a refund via a preprinted form would be illegal, but seeking the same information orally would not be. This is because (a)(1) and (a)(2), which prohibit requesting or requiring personal information orally, expressly apply only to "payments" and not refunds. Finally, Defendant argues that the legislative history of the Act supports its interpretation, because the history reveals no legislative intent to include refund transactions within the scope of subsection (a)(3).

Plaintiffs counter Defendant's interpretation by arguing that the language of subsection (a)(3) is clear and unambiguous in its application to "any credit card transaction," not just purchase transactions and contend the use of this language—as opposed to the limiting language used in (a)(1) and (a)(2)—indicates the Legislature intended (a)(3) to reach more broadly than the proceeding two subsections. As for the Defendant's argument that the Plaintiffs' interpretation of (a)(3) would lead to the anomalous situation where seeking cardholder information during a refund would be illegal if sought via a preprinted form, but not if requested orally, Plaintiffs suggest the Legislature may have considered the use of preprinted forms particularly dangerous, and thus acted to more heavily curtail their use. Finally, Plaintiffs argue that interpreting (a)(3) as not applying to refunds would make the provision unnecessary since (a)(1), which generally bars requests for personal information as a

condition of accepting payment, implicitly covers the use of a preprinted forms during a purchase transaction.

As the California Supreme Court has explained, in cases of statutory interpretation, California courts begin with the language of the governing statute. If the statute's text evinces an unmistakable plain meaning, a court need go no further. Microsoft Corp. v. Franchise Tax Bd., 39 Cal.4th 750, 758 (2006). However, if the language is ambiguous, the court may consider a variety of extrinsic sources, including legislative history, in order to identify the interpretation that best effectuates the Legislative's intent. See id. The California Supreme Court has observed that the various sections of an act may expand or restrict the meaning of an otherwise unambiguous provision beyond the "natural or customary purport of its language." Leroy T. v. Workmen's Comp. Appeals Bd., 12 Cal.3d 434, 438 (1974) (explaining that a party may defeat the plain and customary meaning of a statute's language upon showing "either that some other section of the act expands or restricts [that provision]'s meaning, or that the provision itself is repugnant to the general purview of the act, or that the act considered in pari materia with other acts, or with the legislative history of the subject matter, imports a different meaning."). Similarly, the United States Supreme Court has observed that, regardless of what a quoted phrase might mean standing alone, the plain meaning that a court seeks to discern is "the plain meaning of the whole statute, not of isolated sentences." Beecham v. United States, 511 U.S. 368 372 (1994).

In this case, while its is undeniable that (a)(3)'s most natural interpretation when read in isolation would extend liability to the use of preprinted forms in all credit card transactions, including refunds, the Court finds the subsection's reach is made ambiguous when considered alongside its companion liability provisions, (a)(1) and (a)(2). Both (a)(1) and (a)(2) seek to prevent merchants from conditioning the acceptance of a credit card on the transmission of personal information. Section (a)(1) targets explicit requests by a merchant that a cardholder write down personal identification information upon a credit card transaction form. Cal. Civ. Code § 1747.08(a)(1). Section (a)(2) targets requests by a merchant that the cardholder recite his personal information to the person accepting the card (who then records that information on a credit card transaction form). See id. § 1747.08(a)(2). Both provisions are explicitly limited to purchase transactions. See id. § § 1747.08(a)-

(b). Read in the context of these two provisions, it is unclear whether section (a)(3) was indeed intended to apply to all credit card transactions, or whether it merely sought to eliminate the chance that a merchant might technically comply with provisions (a)(1) and (a)(2)—by neither explicitly requesting personal information be written down or recited during a purchase—but nonetheless capture the information by providing a separate form which merely prompts the customer to enter personal information.

Because the provision, when read in context, is susceptible to multiple meanings, the Court looks to the relevant legislative history in order to "divine and give effect to the Legislature's intent." Brodie v. Workers' Comp. Appeals Bd., 40 Cal.45h 1313, 1324 (2007).

The legislative record before the Court counsels against a finding that subsection (a)(3) was intended to reach refund transactions. Indeed, the legislative materials produced contemporaneously with the Act's consideration discuss its reach exclusively in terms of credit card purchases. For instance, the author of the bill framed the legislation as addressing the "key issue" of whether "retailers [should] be prohibited from requesting a customer's personal identification information *as a condition of accepting the credit card payment*" and explained the bill's purpose was to address the state of existing law which did not "forbid a person from[] requiring a customer to provide a telephone number or other information on a transaction form *as a prerequisite for using a credit card to pay for a transaction.*" (Decl. of Stan Karas ISO Def. Motion, Ex. H. at 72.) Plaintiffs suggest portions of the legislative history discussing the so-called "charge back problem" support their position that the Legislature considered returns within the scope of the statute's reach. In those portions, the Legislature anticipates and answers the argument that a restriction on capturing customer contact information could hamper efforts to resolve problems with defective merchandise, noting it is the customer who will in the vast majority of cases initiate contact:

> A charge back may occur because of a problem with the product purchased by the consumer. It is important to point out that in 99.9 percent of these cases, it is the consumer who contacts the retailer first and initiates the resolution of the problem, not the other way around.
>
> If there is a dispute between the consumer and the merchant, there is a procedure available . . . through a process that involves the retailer's bank, the card-issuing bank and the credit card company. In such disputes, there are no circumstances under which the retailer would need to contact the consumer directly.

(Plaintiffs' Request for Judicial Notice, Ex. 3, at 5.) Rather than supporting Plaintiffs' argument, this excerpt from the legislative history adds to Defendant's case. The paragraph does not, as Plaintiffs contend, demonstrate that the Legislature expressly considered application of the statute in the return and refund context. Instead, like similar statements in the legislative history, this paragraph exemplifies the Legislature's exclusive concern with purchase transactions; the language is geared toward defeating proposed justifications for the collection of personal information during a sale. (See id., at 5-7 (disputing suggestions that personal information must be collected at the front end in order to deal with credit problems, billing errors, or lost credit cards)). Ultimately, Plaintiffs fail to direct the Court to any evidence that the Legislature intended to broaden the scope of subsection (a)(3) beyond that of the concurrently passed subsections, (a)(1) and (a)(2).

Lastly, the Court finds interpreting subsection (a)(3) as the Plaintiffs suggest would lead to an absurd result because it would outlaw solicitation of cardholder information during a refund through the use of a preprinted form, but allow the same solicitation if made orally. This oddity provides additional reason to reject Plaintiff's proposed interpretation. Plaintiffs' argument that the Legislature perhaps intended such a result because of the increased danger associated with preprinted forms—delivered without citation—is unpersuasive.

## CONCLUSION

Ultimately, when read in conjunction with its subsections, subsection (a)(3) of the Song-Beverly Credit Card Act most plausibly reflects a legislative attempt to close a potential gap in protection for credit card purchasers not otherwise protected by subsections (a)(1) and (a)(2). The Court, therefore, **GRANTS** the Defendant's motion for summary judgment on the ground that Cal. Civ. Code § 1747.l.08(a)(3) does not apply to refund transactions. Further, in light of the Court's finding, the Court **DENIES** Plaintiffs' motion for class certification as moot and **VACATES** the October 22, 2007 hearing on that motion.

**IT IS SO ORDERED.**

**DATED:  October 16, 2007**

*Irma E. Gonzalez*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**